

**Signed and Filed: March 4, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>HELLER EHRMAN LLP,<br><br>　　　　　Debtor(s).<br>_____<br><br>MICHAEL BURKART, CHAPTER 11 PLAN ADMINISTRATOR,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>VLG INVESTMENTS, LLC, a Delaware limited liability company; VLG INVESTMENTS 2006, LLC, a Delaware limited liability company; VLG INVESTMENTS 2007, LLC, a Delaware limited liability company; VLG 2008, LLC, a Delaware limited liability company; JOHN ROBERTSON, an individual; MARK MEDEARIS, an individual; MARK WINDFELD-HANSEN, an individual; ELIAS BLAWIE, an individual; DAVID JARGIELLO, an individual; ROBERT J. HELDT, JR. AND KAREN M. KRAMER AS COEXECUTORS OR TRUSTEES IN THEIR CAPACITIES AS SUCCESSOR TO ROSEANNE M. ROTANDARO, TRUSTEE OF THE CRAIG W. JOHNSON TRUST DATED AUGUST 31, 2000; JOHN V. | Bankruptcy Case No. 08-32514<br><br>Chapter 11<br><br><br><br>Adversary Proceeding No. 23-03036<br><br><u>HEARING HELD</u><br>Date: January 12, 2024<br>Time: 10:00 a.m.<br>Location: Via Zoom<br><br>**MEMORANDUM DECISION REGARDING MOTIONS TO DISMISS** |

-1-

```
BAUTISTA, an individual; EDMUND   )
S. RUFFIN, JR., an individual;   )
and DOES 1 through 10,           )
                                 )
              Defendants.        )
_____ )
```

## I.  INTRODUCTION

On January 12, 2024, the court held a hearing on the *VLGI Defendants' Motion to Dismiss Complaint* (the "VLGI Defendants) (Dkt. 19); *Defendant Elias Blawie's Motion to Dismiss the Chapter 11 Plan Administrator's Complaint and Joinder in VLGI Defendants' Motion to Dismiss* (Dkt. 22); *Defendant David Jargiello's Notice of Motion and Motion to Dismiss the Chapter 11 Plan Administrator's Complaint and Joinder to VLGI Defendants' Motion to Dismiss* ("Jargielio Motion") (Dkts. 26, 30); *John V. Bautista and Edmund S. Ruffin, Jr.'s Motion to Dismiss the Plan Administrator's Complaint and Joinder in VLGI Defendants' Motion to Dismiss* (Dkt. 32) (together, the "Motions to Dismiss").[1]  The court took the matter under submission thereafter.

For the reasons set forth below, the court will GRANT the Motions to Dismiss and DISMISS the *Chapter 11 Plan Administrator's Complaint for: (1) Turnover; (2) Breach of Fiduciary Duty; (3) Fraudulent Concealment; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; (6) Conversion; and (7) Unjust Enrichment* ("Complaint") (Dkt. 1, unredacted at Dkt. 9) with leave to amend as the VLGI Defendants and without leave to amend as to all other defendants.

---

[1] No similar motion was filed by Robert J. Heldt, Jr. and Karen M. Kramer as Coexecutors or Trustees in Their Capacities as Successor to Roseanne M. Rotandaro, Trustee of The Craig W. Johnson Trust Dated August 31, 2000 ("Johnson").  See discussion at IV, D.

-2-

Case: 23-03036   Doc# 55   Filed: 03/04/24   Entered: 03/04/24 10:52:43   Page 2 of 18

## II. STANDARDS GOVERNING MOTIONS TO DISMISS[2]

To overcome a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (made applicable by Federal Rule of Bankruptcy Procedure 7012), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). In considering a Rule 12(b)(6) motion, this court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Additionally, "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud' . . . Any averments which do not meet that standard should be "disregarded," or "stripped" from the claim for failure to satisfy Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (internal citations omitted).

## III. BACKGROUND

To borrow from the Plaintiff's own language, the Complaint reads more like a shaggy dog story than an operative complaint.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-3-

Complaint Ex. 28. The Complaint runs 65 pages with 208 operative paragraphs and 700 pages of exhibits, and details events going back twenty years. While Plaintiff may have felt all of this narrative and history necessary to the Complaint, in reality, many of the events or acts of wrongdoing described do not fit into any of the seven causes of action.

The essential background and allegations (though much more detail is expounded on in the Complaint), is thus: now-Debtor Heller Ehrman LLP ("Heller") merged with Venture Law Group in 2003. Part of the compensation structure of Venture Law Group, which then also became part of the compensation structure of Heller, were distributions from investment funds established to invest in Venture Law Group's startup clients. The major investment vehicle was defendant VLG Investments, LLC ("VLGI"). VLGI would invest in the start-ups of Venture Law Group's clients, and also allowed certain partners and other attorneys and staff to invest in those clients via VLGI. Or rather, VLGI created annual funds that accomplished the task. Each year, a subfund of VLGI would be established, in which members' funds were pooled, then investments made and held. Each subfund was denominated by "VLG Investments + YEAR," such as VLG Investments 2002, VLG Investments 2004, and so on. Until 2006, those subfunds, while separately named and maintained, remained part of VLGI. Beginning in 2006, each subfund was incorporated as a separate limited liability company each year, resulting in defendants VLG Investments 2006, LLC; VLG Investments 2007, LLC; and VLG Investments 2008, LLC (together, the "Defendant Funds"). For the years after the merger and prior to 2006, Heller was a

Case: 23-03036   Doc# 55   Filed: 03/04/24   Entered: 03/04/24 10:52:43   Page 4 of 18

member of VLGI and a member of various subfunds, except for the 2004 subfund and 2005 subfund. Heller was a member and manager of the Defendant Funds, until, improperly or not, it was removed as a manager during the bankruptcy case in 2008.

Emails between individual defendants and others associated with VLGI and Heller discuss the moving of VLGI records to secure locations prior to filing bankruptcy and maintaining the separateness between Heller and VLGI (along with emails that ostensibly have nothing to do with VLGI and only to do with the obvious inability of Heller to pay back capital contributions to departing partners and other creditors). Complaint at ¶¶ 42-70.

During Heller's windup and bankruptcy, a non-defendant, Mark Royer, used available funds from the 2002 subfund to pay out departing attorneys who were owed money from the (apparently illiquid) 2005 subfund.

Also in 2002, VLGI, via the 2002 subfund, purchased or acquired a combination of common and preferred stock from fledgling start-up SpaceX. Each type of share was purchased for the benefit of the members of the 2002 subfund. Defendants Ruffin, Johnson (through the trustee of his trust), and Bautista also personally purchased SpaceX stock. At the time of those personal purchases, it was VLGI policy for partners to personally purchase no more than 30% of any stock offered to VLGI or its subfunds (known as the 70/30 rule). The personal purchases were in excess of the 30% of what was acquired by the 2002 Subfund.

By 2021, the value of SpaceX stock skyrocketed. Individual defendants Medearis, Windfeld-Hansen, and Robertson, acting on

behalf of VLGI, engaged in a stock-buyback with SpaceX, resulting in a large multimillion dollar payout and distribution to both the 2002 and 2005 subfund members, including a $2.6 Million payout to Heller of only preferred stock.

However, certain Defendants relied on unsigned and unexecuted amended subfund documents to determine that Heller only held some interest in preferred stock, but not common stock. This determination that Heller only had an interest in preferred stock, along with the connection of the 2002 subfund (of which Heller was a member) and the 2005 subfund (of which Heller was not) both worked to limit Heller's distribution of SpaceX stock to an amount far less than what Plaintiff contends it should have been. Defendants then apparently worked to actively conceal from the Plaintiff facts that might have revealed a larger amount owed to Heller.

Though this is the crux of the Complaint, the additional details of the Complaint work to muddy the waters considerably. For instance, a portion of the Complaint (¶¶ 76-92) consists of allegations that Robertson misled the Plaintiff by expressing an interest in acquiring some of the Heller assets at a very low price. It is of note, however, that notwithstanding repeated attempts by Robertson, "the Plan Administrator did not pursue the sale of remnant assets to Robertson." (¶ 92). As another example, ¶¶ 156-166, rather than reading like operative provisions of a complaint for recovery on a cause of action, read more like a discovery problem that the Plaintiff should have dealt with by seeking relief from this court under well

established discovery procedures. It does not relate to any claim for relief in this adversary proceeding.

A remarkable absence from the Complaint is any reference to a comprehensive settlement with dozens of Heller former partners, including six of the individual defendants. That settlement (described in more detail in the following discussion) was comprehensive and appears to the court as an absolute defense to claims against those settling defendants arising at or prior to that time.

**IV. DISCUSSION**

    **A. Defendants John Robertson; Mark Medearis; Mark Windfeld-Hansen; Elias Blawie; John V. Bautista; and Edmund S. Ruffin Are Released as to Claims Arising Prior to 2021.**

On August 13, 2010, this court entered the *Order Granting Motion for an Order Approving Settlements with Former Heller Shareholders and Determining That Such Settlements Will Constitute "Good Faith" Settlements Under California Code of Civil Procedure 877* ("Release") in the main bankruptcy case (Main Case Dkt. 1443). The various settlements encompassed by the Release are incredibly broad and released from liability the above-named Defendants and others from *any* future claims, known or unknown to the Heller at the time of the release, including the claims Plaintiff makes in this Complaint. As the docket history reflects, the Release was the result of a long bargaining process. The court, having presided over this case from the outset, is quite familiar with the Release, including the carve-out for the unfinished business doctrine (later reversed on appeal), which requires that "any income generated

-7-

Case: 23-03036    Doc# 55    Filed: 03/04/24    Entered: 03/04/24 10:52:43    Page 7 of 18

through the winding up of unfinished business [of a dissolved partnership] is allocated to former partners according to their respective interests in the partnership", *Jewel v. Boxer,* 156 Cal.App.3d 171, 176 (Cal. Ct. App. 1984).

Given this long history, the court is surprised that the Plaintiff now argues this Release was not part of the Complaint and thus cannot be considered. This argument ignores settled Ninth Circuit precedent to the contrary. *See Parrino v. FHP, Inc.* 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds) (courts may take judicial notice of "documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint"). The Release is crucial to the propriety of many of Plaintiff's claims, and this court can and will take judicial notice of relevant documents that have been on its docket for the past 13 years.

Plaintiff's alternative argument that the Release was limited to actions taken in 2007 or 2008 is also not well-taken. The Release and underlying settlements speak for themselves.

Accordingly, the claims against the above-named six defendants encompassed by the Release must be dismissed without leave to amend, namely, any cause of action based on the following:

- Removing Heller as a manager of VLGI and other subfunds in 2008;
- Partner purchases of SpaceX stock in excess of the 70/30 policy (discussed below) in 2002;

Case: 23-03036    Doc# 55    Filed: 03/04/24    Entered: 03/04/24 10:52:43    Page 8 of 18

- Defendants allowing or directing the 2005 subfund to repurchase the interests of the departing members of the 2002 subfund in 2008.
- Any other conduct prior to August 13, 2010.

**B.  The Plaintiff Does Not State a Plausible Claim for Turnover**

Turnover is a remedy designed to deal with assets that were clearly the debtor's and then subsequently converted or transferred. *U.S. v. Whiting Pools, Inc.* 462 U.S. 198, 205-06 (1983); *In re Century City Doctors Hosp., LLC*, 466 B.R. 1, 19 (Bankr. C.D. Cal. 2012) ("A turnover proceeding is not intended as a remedy to determine the disputed rights of parties to property; rather it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.") (quoting *Lauria v. Titan Sec. Ltd.*, 243 B.R. 705, 708 (Bankr. N.D. Ill. 2000).

As noted above, turnover is a remedy as to undisputed funds only. *See Heller Ehrman LLP v. Gregory Canyon Ltd. (In re Heller Ehrman LLP)*, 461 B.R. 606, 608 (Bankr. N.D. Cal. 2011) ("Here, the amounts, if any, owed to Source by MCI are in dispute and this dispute rests on breach of contract issues.")

The Plaintiff alleges a claim for turnover as to all defendants. However, the Complaint's citations regarding turnover pursuant to 11 U.S.C. § 542(a) only serve to reinforce the point that turnover is simply not appropriate here: *In re Process America, Inc*. 588 B.R. 82 (Bankr. C.D. Cal. 2018) (turnover appropriate for a contractual right to credit card processing residuals); *Sonoma West Medical Center, Inc.* 2021 WL

-9-

4944089, at *6-7 (Bankr. N.D. Cal. Oct. 22, 2021) (account receivables). The seminal case involving turnover, *Whiting Pools*, detailed a physical asset seized by the IRS prior to bankruptcy. All of these cases involved physical assets or money—a far cry from a contingent right to a distribution of stock in the far future based on joint ownership in an investment fund. This is what is at stake here—how much of distribution is owed (as Heller did receive millions of dollars in a previous distribution in 2021), not even ownership of the stock itself.

Accordingly, the Plaintiff's claim for turnover will be dismissed as to all defendants without leave to amend.

### C. No Cause of Action is Properly Plead Against the Defendant Funds

The claim for turnover having been disposed, the only claims asserted against the Defendant Funds are for conversion and unjust enrichment. The only facts plead as to the Defendant Funds is Debtor's alleged improper removal as manager (but not member) of the Defendant Funds at the time of the bankruptcy filing (for which any remedy is time-barred), and a bare statement that the Defendant Funds are "Related Entities" with VLGI, meaning all acts of VLGI should also be attributed to the Defendant Funds, Complaint at ¶ 30. There are no facts asserted that these Defendant Funds, which are indeed separate legal entities from VLGI (even if management agreements empower various boards of directors to steer the Defendant Funds in similar directions), were part of the alleged concealment or conversion of SpaceX funds for which Plaintiff ultimately seeks

recovery. There are no facts plead that there was any distribution from the Defendant Funds that was not made to Heller due to the Debtor's removal as a manager, any other fact implicating the Defendant Funds in a conversion scheme, nor any facts that the Defendant Funds were themselves a recipient of the SpaceX distribution or any other unjust enrichment. Instead, what is plead amounts to a discovery dispute—because Heller has not received any distributions from the Defendant Funds and the terms of the fully executed operating agreements have not been disclosed to Plaintiff "by Robertson, Medearis, Windfeld-Hansen, VLGI 2006, VLGI 2007, and VLGI 2008, it is unclear at this point as to what [Heller's] ownership interest in the entities is and whether amounts are owed[.]" Complaint at ¶ 141. This grievance does not track to any cause of action but amounts only to speculation about what might be established through further discovery.

Because no facts regarding conversion or unjust enrichment are plausibly plead as to the Defendant Funds, the Defendant Funds will be dismissed from this action without leave to amend.

### D. No Cause of Action is Properly Plead Against Defendant Johnson, and No Cause of Action Against Any Defendant Can Properly be Based on a Violation of the 70/30 Rule.

Plaintiff also asserts causes of action for conversion and unjust enrichment against all Defendants. The court focuses on these causes of action as they relate to Defendants Johnson, Ruffin, and Bautista.

Even though Johnson (or rather, Johnson's representatives) did not respond to the Complaint, the court will dismiss these

-11-

two claims against him (as noted above, the court is also dismissing the turnover claim against Johnson and all other defendants). The only facts alleged against Johnson in the narrative of the Complaint are that Johnson, via the trustee of his trust, personally purchased SpaceX stock in excess of Venture Law Group and VLGI's so-called 70/30 policy, which dictated that Venture Law Group partners should not personally purchase more than 30% of any stock offered by Venture Law Group's clients to VLGI or its subfunds.

Plaintiff does not allege what harm to Heller or VLGI resulted from violation of this policy. For instance, Plaintiff does not allege that the 70/30 policy is in place to ensure that partners do not hoard stock for themselves, when it could be purchased by relevant subfunds for the benefit of all members. Nor does Plaintiff allege that had the policy not been violated, a larger share of stock would have been available to (and presumably purchased by) the appropriate VLGI subfund, and Heller would have received a larger distribution nineteen years later, leading to a claim for conversion and/or unjust enrichment.

It is also not alleged, nor is it known to the court, that had Johnson, Ruffin, Bautista, and others not purchased SpaceX stock personally, then that stock would have (1) been available for purchase by the 2002 subfund, and (2) actually been purchased by the 2002 subfund. Plaintiff instead appears to rely on the court making the above inferences for the claims based on a bare violation of policy, with no actual harm alleged in connection with that policy violation. That is simply not a

proper pleading under the standards of Rule 12(b)(6), let alone the heightened standards of Rule 9(b).

Further still, this violation would have taken place in 2002, over twenty years prior to this Complaint, long after the three-year statute of limitations on a cause of action for conversion would have run. Cal. Code Civ. Proc. § 338(c). While the Plaintiff argues that the fraudulent concealment of the Defendants tolled the statute of limitations, the court rejects this argument in relation to Defendant Johnson:

> To the extent our courts have recognized a "discovery rule" exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff. In those instances, "the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion.

*AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal.App.4th 631, 639 (internal citations omitted). Here, Plaintiff cannot invoke this tolling rule because Johnson was not a fiduciary to Heller. Breach of fiduciary duty appears elsewhere as a cause of action in the Complaint, and Johnson is not one of the named fiduciaries. Having alleged no duty to Heller, the Plaintiff cannot claim the statute of limitations has been tolled.

Accordingly, since the only claims alleged against Defendant Johnson are based on the alleged violation of the 70/30 rule, he will be dismissed as a party to this action without leave to amend. For the same reason, the court will not

consider violations of the 70/30 rule as a basis for any cause of action alleged against Ruffin or Bautista.

### E. No Cause of Action is Properly Plead Against Defendant Jargiello.

The Plaintiff asserts causes of action for fraudulent concealment, conversion, and unjust enrichment against Defendant Jargiello. At the time of the merger with Heller, Jargiello served as general counsel of Venture Law Group. Post-merger, Jargiello served as general counsel for Heller and for VLGI as contemplated by the merger documents (Jargiello Motion, Dkt. 30). The operative facts of the Complaint as to Jargiello allege that he was involved in a string of emails close to Heller's bankruptcy filing in 2008 discussing potential creditor assertions that VLGI and the subfunds are assets of Heller, with Jargiello recommending "maintaining absolute separateness" and recommending keeping further discussions confidential and privileged and potentially engaging outside counsel on the matter. Complaint at ¶¶ 23 and 52 (same email). Jargiello was also included in emails in which Defendant Blawie notified other individual defendants he had moved VLGI records after Heller's bankruptcy filing.

Though it is clear from the Complaint that Jargiello engaged in conversations surrounding basic risk assessment regarding the ways in which potential creditors would attack VLGI assets in the event of Heller's bankruptcy, the Plaintiff spins this conversation into Jargiello and other defendants' concealment of material facts "to create the impression that VLGI, and other Funds and assets of VLGI and the Funds were not

-14-

property of the bankruptcy estate." Jargiello is not accused of moving records, of failure to turn over records to the Plaintiff, nor of any other actions that may have done anything to actually change the status quo between Heller and VLGI and the subfunds.

Jargiello was then relieved of his duties as general counsel after Heller filed bankruptcy, so no actions can be attributed to him after that point.

Without any facts plead as to Jargiello that go beyond emails regarding risk assessment in 2008, no cause of action for fraudulent concealment, conversion, or unjust enrichment can be properly plead.

Additionally, the court agrees with Jargiello's assessment (Jargiello Motion, Dkt. 30) that time has long since run to bring a claim against him. Cal. Code Civ. Proc. § 340.6, *Lee v. Hanley* 61 Cal.4th 1225 (Cal. 2015) (statute of limitations for claims relating to an attorney's alleged breach of fiduciary duty is either one-year from the date of discovery of wrong-doing, "or four years from the date of the wrongful act or omission, whichever occurs first").

Accordingly, Jargiello will be dismissed as a party to the Complaint without leave to amend.

**F.  The Causes of Action Related to Facts From 2021 Are Viable.**

As discussed above, the Plaintiff describes the events surrounding the 2021 buyback of SpaceX stock, which appears to be the crux of the Complaint: (1) VLGI distributed proceeds based on unsigned and incomplete operating agreements and index

-15-

for the 2002 subfund at the direction of Medearis, Robertson, and Windfeld-Hansen; and (2) VLGI made a distribution of SpaceX funds to the 2005 subfund and its members, which did not exist at the time of the initial SpaceX stock purchases and which Heller is not a member.

These facts may indeed be aligned with claims for breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, intentional misrepresentation, conversion, or unjust enrichment against VLGI and Medearis, Robertson, and Windfeld-Hansen. Any amended complaint should eliminate unnecessary allegations and focus on conduct that would constitute a plausible claim for relief based on these recent actions.

**V.  CONCLUSION**

For the reasons set forth above, the court will DISMISS the Complaint without leave to amend in part, and with leave to amend in part. The court will issue concurrent orders relating to the following:

- Granting the *VLGI Defendants' Motion to Dismiss Complaint* (Dkt. 19) with leave to amend as to the discrete events occurring during or after 2021 described above;
- Granting *Defendant Elias Blawie's Motion to Dismiss the Chapter 11 Plan Administrator's Complaint and Joinder in VLGI Defendants' Motion to Dismiss* (Dkt. 22) without leave to amend;
- Granting *Defendant David Jargiello's Notice of Motion and Motion to Dismiss the Chapter 11 Plan Administrator's Complaint and Joinder to VLGI*

-16-

Case: 23-03036    Doc# 55    Filed: 03/04/24    Entered: 03/04/24 10:52:43    Page 16 of 18

*Defendants' Motion to Dismiss* (Dkts. 26, 30) without leave to amend;

- Granting *John V. Bautista and Edmund S. Ruffin, Jr.'s Motion to Dismiss the Plan Administrator's Complaint and Joinder in VLGI Defendants' Motion to Dismiss* (Dkt. 32) without leave to amend; and
- Dismissing Defendant Johnson as a party from this adversary proceeding without leave to amend.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

Robert J. Heldt, Jr. and Karen M. Kramer
as Co-Executors or Trustees
in Their Capacities as Successor to
Roseanne M. Rotandaro, Trustee of the
Craig W. Johnson Trust Dated August 31, 2000
25100 La Loma Drive
Los Altos Hills, CA 94022

-18-