Entered on Docket
September 3, 2024
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: September 3, 2024**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>HELLER EHRMAN LLP,<br><br>        Debtor. | Bankruptcy Case<br>No. 08-32514<br><br>Chapter 11 |
| MICHAEL BURKART, CHAPTER 11 PLAN ADMINISTRATOR,<br><br>        Plaintiff,<br>v.<br><br>VLG INVESTMENTS, LLC, a Delaware limited liability company, *et al.*,<br><br>        Defendants | Adversary Proceeding<br>No. 23-03036 |

**MEMORANDUM DECISION REGARDING MOTION**
**TO DISMISS FIRST AMENDED COMPLAINT**

On August 27, 2024, the court heard argument on the *VLGI Defendants' Motion to Dismiss First Amended Complaint* ("MTD") (Dkt. 116). Appearances are as noted on the record. For the reasons that follow, the MTD will be GRANTED.

-1-

This is Plaintiff's second attempt to recover from VLG Investments, LLC ("VLGI") and individual defendants John Robertson, Mark Medearis, and Mark Windfeld-Hansen ("Individual Defendants").  In the operative complaint, the *Chapter 11 Plan Administrator's First Amended Complaint for (1) Breach of Fiduciary Duty; (2) Fraudulent Concealment; (3) Negligent Misrepresentation; (3) Intentional Misrepresentation; (5) Conversion; (6) Unjust Enrichment; (7) Accounting; and (8) Declaratory Relief* (Dkt. 111) ("FAC"), the seminal and dispositive issue is whether Plaintiff, as Chapter 11 Plan Administrator on behalf of debtor Heller Ehrman LLP ("Heller") was entitled to the proceeds of a 2021 sale of certain common stock, in addition to the proceeds of the sale of the preferred stock of the same issuer.

All of the stock in question was acquired via a VLGI subfund, the 2002 Subfund, prior to Heller's merger with Venture Law Group, a law firm that acquired stock of various clients during their start-up stages.  Venture Law Group merged with Heller on September 30, 2003.  Heller filed Chapter 11 in 2008 and thereafter Plaintiff became Plan Administrator under its confirmed plan.

In 2006, common stock and preferred stock of other issuers held in the 2002 Subfund was liquidated and modest amounts were paid to Plaintiff.  In a 2021 transaction, the Individual Defendants were involved in several communications, following which VLGI made a distribution of proceeds of liquidation of preferred stock, but no distribution of common stock proceeds, to Plaintiff.  Extensive informal discovery followed, the

original complaint was filed on September 29, 2023; the court issued its *Memorandum Decision Regarding Motions to Dismiss* (Dkt. 55) that lead to the FAC; the FAC was filed on May 7, 2024 and the MTD followed in due course.

In Para. 54 of the FAC, Plaintiff refers to emails among the Individual Defendants discussing communications among some of them and Plaintiff, stating, *inter alia*:

> ". . . Also, this document says point blank that VLG's interest in the common stock is zero. I am not sure that this has been specifically pointed out to him."

> Individual Defendant Robertson responded on June 1, 2023, stating "I've told him to look specifically at the appendix which says the VLG common interest is zero. He is aware of this. . . "

Then in Para. 56, the Plaintiff quotes directly the critical language in the critical document that summarizes succinctly what this dispute is all about:

> "If you look at the 2002 Appendix to the HEWM/VLG Investments LLC Agreement, there are "Common Interests" and "Preferred Interests." VLG had a Preferred Interest. VLG did not have a Common Interest (see the language in the appendix that says "The Common Interest of VLG will equal zero." That is in Section 4(a)(iv)(A)(II) of the 2002 Appendix."

The FAC includes eight claims for relief. The first is subtitled "Breach of Fiduciary Duty – Against VLGI, Robertson, Medearis and Windfeld-Hansen". There is no reference to any derivative action being included although Paragraph 83 includes a rather unremarkable recital, without citation to any applicable caselaw, rule, or statute that the Plaintiff was not

-3-

required to make a demand upon VLGI prior to filing a derivative suit, and that such a demand would be futile.

"Under the *Tooley* test[1], the determination of whether a stockholder's claim is direct or derivative 'must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?'" *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1262 (Del. 2021) (internal citations omitted). This test is agreed upon by both parties. Plaintiff takes this test to mean only that Plaintiff, as Plan Administrator for Heller need not make a demand upon VLGI prior to including it as a Defendant. Plaintiff does not discuss the actual questions presented by *Tooley*, nor does he address his standing to bring the derivative action at all, while Defendants persuasively argue that he indeed does not have the standing to bring the claim against VLGI.

Plaintiff builds his case around the notion that because some of the supporting schedules of Amended and Restated VLGI Appendix 2002 (referred to in the above quote) were incomplete, that he is entitled to defeat the MTD and get on with discovery to prove the contrary. More specifically, since there was a distribution in 2006 on account of common stock (which Defendants claim was incorrect or explainable for some other reason) he contends that it is plausible that there is some explanation to rebut the operative language in the 2002

---

[1] *Tooley v Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

-4-

Appendix, and that Plaintiff through Heller had more than zero interest in common stock.

The First Claim plainly was not framed as a derivative action. Were that the case, Plaintiff would need to seek recovery for the benefit of VGLI. He is not doing that, but only seeking a recovery for the Heller estate he administers. That theory of recovery also suffers from the same infirmities discussed below.

The FAC's second, third, fourth and sixth claims for relief are sort of a collection of alternative ways to plead the same relief sought but under slightly different theories (fraudulent concealment, negligent misrepresentation, intentional misrepresentation and unjust enrichment and restitution.) Further, the fifth claim for relief is against VLGI only, and is couched in terms of conversion. The seventh and eight claims are for an accounting and for declaratory relief, but each only against VLGI and not the Individual Defendants.

For all of those claims, of course, the court must take all the facts of the FAC as true. It does so and comes to the same conclusion. The facts presented for an alternative to the literal meaning of the words of the 2002 Appendix are merely conjecture, and thus nothing more than a possibility that there is an explanation to contradict the specific recital that the "common interest of [Heller} will equal zero". As such, the FAC simply is not plausible under the traditional pleading standards for FRCP 12(b)(6) motions such as this.[2]

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662.

Case: 23-03036   Doc# 122   Filed: 09/03/24   Entered: 09/03/24 11:08:30   Page 5 of 7

The fifth claim for relief fails on its face as there was no property interest of Plaintiff that was converted. The seventh and eighth claims for relief do nothing more than seek the same possible – but not plausible – outcome.

The Ninth Circuit has made clear its rule regarding "obvious alternative explanations". *In re Century Aluminum Co. Sec. Litig.*, 729 F. 3rd 1104 (9th Cir 2013). There are two possible explanations about the 2006 and 2021 common stock different treatments, but only one resulting in liability. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true. *Id,* at 1108. Here, mere possibility does not equate to plausibility.

Given the history of this case, the extensive involvement by the Plaintiff and his counsel and informal discovery efforts, not to mention the extensive litigation on behalf of all parties for the initial complaint, it is time to put this matter to rest once and for all. No amendment will save it.

For these reasons, the MTD will be GRANTED without leave to amend. Counsel for Defendants should submit a form of order granting the MTD for the reasons stated in this Memorandum Decision and a form of judgment concluding this adversary proceeding in its entirety for the same reasons, with no recovery by Plaintiff.

**END OF MEMORANDUM DECISION**

Case: 23-03036    Doc# 122    Filed: 09/03/24    Entered: 09/03/24 11:08:30    Page 6 of 7

COURT SERVICE LIST

ECF Recipients